UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BILLIE OSBORNE,

        Plaintiff,

vs.

COMMISSIONER OF
SOCAL SECURITY,

        Defendant.

Case No. 3:13-cv-425

District Judge Walter Herbert Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2]  This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 6),[3] and the record as a whole.

I.

A. **Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of July 1, 2009.  PageID 191-200.  Plaintiff suffers from a number of impairments including, among others, Crohn's

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Citations in this opinion to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

disease, a seizure disorder, an adjustment disorder, and gastroesophageal reflux disease ("GERD").  PageID 71-72.

After initial denial of her applications, Plaintiff received a hearing before ALJ David A. Redmond.  PageID 88-107.  The ALJ issued a written decision on August 16, 2012 finding Plaintiff not disabled.  PageID 66-82.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014;

2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: Crohn's disease with residuals of surgery; history of seizure disorder; and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b)[4] and 416.967(b) with the following limitations: lifting no more than 10 pounds; the ability to be off her feet for 15 minutes each hour to relieve fatigue or discomfort; precluded from unprotected heights, moving machinery, or other dangerous instrumentalities; needs free access to restroom facilities; and no production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* § 404.1567(b).  An individual who can perform light work is presumed also able to perform sedentary work.  *Id.*  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.* § 404.1567(a).

7. The claimant was born [in] 1967 and was 42 years old, which defined her as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

PageID 71-81.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 46-50. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

    **B.**    **Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 71-79. Plaintiff, in her Statement of Errors, also summarizes the evidence of record. Doc. 7 at PageID 985-92. The Commissioner's response to Plaintiff's Statement of Errors refers the Court to the ALJ's recitation of relevant evidence and offers no objections to Plaintiff's summary of relevant facts. Doc. 10 at PageID 1011. Accordingly, except as

otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

In her Statement of Errors, Plaintiff sets forth a single issue for review.  She argues that the ALJ erred by not finding that she was disabled for at least a closed period of time -- from July 1, 2009 to late August 2010.  Doc. 7 at Page 994.  In so contending, however, Plaintiff presents two separate arguments: (1) the ALJ failed to properly evaluate and weigh the medical opinion evidence; and (2) the ALJ erred in assessing her complaints of disabling symptoms and limitations.  *See id.* at PageID 999-1000.  Having carefully reviewed the administrative record and the parties' briefs, and also having carefully considered the ALJ's analysis leading to the non-disability finding here at issue, the Court finds that the ALJ carefully and reasonably reviewed the record, appropriately considered the medical source evidence at issue, and properly evaluated Plaintiff's allegations of disabling symptoms and limitations.  Thus, as more fully explained herein, the Court finds the ALJ's decision supported by substantial evidence and recommends that the Court affirm the ALJ's non-disability finding.

A.  **Medical Source Opinions**

Plaintiff presents no argument that the ALJ erred in rejecting the opinion of any medical source whose opinion could have resulted in a disability finding.[5] Doc. 7 at PageID 997-99. Instead, Plaintiff's sole argument in this regard asserts that the ALJ improperly gave "significant weight" to and relied on the opinions of: (1) treating surgeon Randy Woods, M.D.;[6] (2) examining sources Giovanni Bonds, Ph.D.[7] and Damian Danopulos, M.D.;[8] and (3) non-

---

[5] The only opinion in the record regarding Plaintiff's limitations that -- if accepted -- could result in a disability finding was the opinion of Deborah Makosky, a certified nurse practitioner ("C.N.P."). *See* PageID 79, 868-69. Plaintiff, however, presents no argument challenging the ALJ's rejection of Nurse Makosky's opinion and such failure results in a wavier of any such argument for purposes of this appeal. *See Dyamond v. Comm'r of Soc. Sec.*, No. 3:13-cv-117, 2014 WL 294464, at *2 (S.D. Ohio Jan. 27, 2014) (stating that "[f]ailure to raise an issue in the Statement of Errors constitutes waiver of any additional claim") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001)). Assuming, *arguendo*, that any such error was preserved and asserted, the undersigned finds that the ALJ properly analyzed the weight of the opinion, and substantial evidence supports his conclusion. Notably, a nurse practitioner is not an "acceptable medical source" as that term is defined by 20 C.F.R. § 404.1513 and, therefore, Nurse Makosky's opinion is not entitled to controlling weight. *See* SSR 96–2p, 1996 WL 374188, at *1 (July 2, 1996). Instead, such opinion must only be evaluated based on relevant factors such as "how long the source has known the individual; how consistent the opinion is with other evidence; and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Here, the ALJ found Nurse Makosky's opinion "inconsistent with the opinion of Dr. Woods, who opined only a few days later that [Plaintiff] experienced far fewer restrictions" -- again, a conclusion the undersigned finds supported by substantial evidence. PageID 79.

[6] Dr. Woods opined on August 15, 2009 that Plaintiff could lift and carry up to twenty pounds and was moderately limited in her ability to push, pull, bend, and reach. PageID 870-71. Moderate functional limitations are "non-disabling." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011). Dr. Woods further opined that although Plaintiff's health status was deteriorating, he expected her functional limitations to last between nine and eleven months (*i.e.*, not the twelve month period required for a finding of disability). *Id.* Subsequently, in January 2011, Dr. Woods opined that Plaintiff had no restrictions on her activities. PageID 959.

[7] On January 12, 2010, Dr. Bonds found Plaintiff moderately impaired in her ability to withstand the stress and pressure associated with day-to-day work activities; mildly impaired in in her ability to relate to peers, supervisors and the public; mildly impaired in her ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks; and not impaired in her ability to understand, remember, and follow instructions. PageID 664.

[8] On December 30, 2009, Dr. Danopulos opined that Plaintiff's "ability to do any work-related activity is affected and restricted from her chronic Crohn's disease plus her severe anxiety[,]" but never specified the extent to which her ability to work was "affected" by her conditions. PageID 652.

examining state agency reviewers Dimitri Teague, M.D.,[9] William Bolz, M.D.,[10] Steven Meyer, Ph.D.,[11] and Marianne Collins, Ph.D.[12]  Doc. 7 at PageID 997-99.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id*.  "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id*.  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*.  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

---

[9]  Dr. Teague reviewed the record on March 24, 2010 and opined that Plaintiff could perform the exertional requirements of light work, though she was limited to lifting or carrying no more than ten pounds.  PageID 687.  Dr. Teague also opined that Plaintiff could occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, and crawl; and must avoid all exposure to hazards.  PageID 688, 690.

[10]  Dr. Bolz affirmed Dr. Teague's opinion on January 29, 2011, noting "[t]here is no evidence of worsening since the initial claim."  PageID 863.

[11]  Dr. Meyer reviewed the record on February 4, 2010 and found Plaintiff moderately impaired in her ability to maintain social functioning; moderately impaired in her ability to maintain concentration, persistence, or pace; and mildly impaired in her ability to perform activities of daily living.  PageID 678.  Dr. Meyer concluded that Plaintiff was "[c]apable of simple and moderately complex routine work, at [a] reasonable pace, in [a] setting with regular expectations, occasional intermittent interactions with others[,] and few changes."  PageID 684.

[12]  Dr. Collins affirmed Dr. Meyer's assessment on December 30, 2010.  PageID 847.

399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions

according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527(d)(3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

    1.    **Dr. Woods**

Here, because Dr. Woods is a treating physician, his opinion is entitled to controlling weight if well-supported by objective findings and consistent with substantial evidence of record. *See LaRiccia*, 549 F. App'x at 385. On appeal, Plaintiff points to no objective findings inconsistent with Dr. Woods's opinions and the undersigned notes the consistency of his opinions with all other medical source opinions of record. Nevertheless, Plaintiff argues that the ALJ erroneously relied on Dr. Woods's August 15, 2009 opinion because it was given prior to Plaintiff's "st[r]oke type event" that took place during her hospitalization that began in July 2009 and continued through September 2009. Doc. 7 at PageID 994, 998. Notably, Plaintiff fails to articulate how subsequent medical evidence impacts Dr. Woods's opinion.

While it is true that Dr. Woods's August 2009 opinion pre-dates Plaintiff's "stroke type event," she points to no evidence indicating more severe limitations than that opined by Dr.

Woods. Further -- and perhaps most importantly -- the ALJ specifically found that Plaintiff "recovered relatively well after being discharged" from her hospitalization, a conclusion rendered in reliance on Dr. Danopulos's normal clinical findings upon examination in December 2009. PageID 75. Such discussion by the ALJ reflects a reasonable and careful consideration of medical evidence post-dating Plaintiff's "stroke type event." *Cf. Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (finding that, before relying on medical opinion evidence, an ALJ -- in the administrative decision -- must set forth "some indication that [he or she] at least considered" subsequent medical evidence); *see also Blakely*, 581 F.3d at 409. Because the ALJ's decision reveals consideration of medical evidence post-dating Dr. Woods's opinion, the undersigned finds no error in this regard.

2. **Drs. Danopulos and Bonds**

Plaintiff similarly argues that the ALJ erroneously relied upon the opinions of Dr. Danopulos and Bonds because their opinions pre-date certain treatment -- namely, seizure episodes in June and July of 2010. Doc. 7 at PageID 996-97. Similar to the deficiencies in Plaintiff's arguments concerning the ALJ's analysis of Dr. Woods's opinion, Plaintiff does not articulate how any evidence post-dating the opinions of Drs. Danopulos and Bonds impacts their opinions. In addition, the undersigned's review of the ALJ's decision reveals significant consideration of Plaintiff's seizure episodes and, specifically, a July 22, 2010 statement by Dr. Overman -- Plaintiff's primary care physician -- that her seizure condition was "well controlled." PageID 76, 741. This statement was based upon Plaintiff informing him that she had not had any seizures since starting Dilantin and was "feeling great." PageID 76, 739. Based on the foregoing, the undersigned finds no error in the ALJ's reliance on the opinions of Drs.

Danopulos and Bonds based upon the ALJ's significant consideration of evidence post-dating their opinions.  *Cf. Fisk*, 253 F. App'x at 585; *see also Blakely*, 581 F.3d at 409.

### 3.     State Agency Record Reviewing Medical Sources

Finally, Plaintiff argues -- in one single sentence -- that the opinions of four state agency record reviewers "are not entitled to any weight as they did not review the entire record and did not evaluat[e] or observe [her]."  Doc. 7 at PageID 998.  Plaintiff -- once again -- fails to offer any argument as to how subsequent medical evidence undermined their opinions and, therefore, the Court considers this argument waived.  *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (concluding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citation omitted).

Assuming, *arguendo*, that such argument was adequately presented, the Court finds no merit to Plaintiff's arguments.  First, the Court notes that, pursuant to Social Security Ruling 96-6p, "[s]tate agency medical and psychological consultants . . . are experts in the Social Security disability programs, [and] the rules in 20 CFR 404.1527(f) . . . require [ALJs] to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists."  1996 WL 374180, at *2 (July 2, 1996).  The ALJ may "not ignore these opinions and must explain the weight given" to the opinions of these medical sources in his or her decision.  *Id.*  Thus, by definition, state agency record reviewers do not evaluate or observe Plaintiff -- yet, the regulations provide that the ALJ is required to consider their opinions according to the 404.1527(c) factors.  *See id*.  Accordingly, insofar as Plaintiff suggests that the opinions of these medical sources cannot be relied upon in determining disability, such argument has no merit.

Further, the Court notes that Drs. Bolz and Collins offered opinions on December 30, 2010 and January 29, 2011, respectively -- *i.e.*, after expiration of the closed period of disability Plaintiff seeks on appeal. *See* doc. 7 at PageID 983; PageID 847, 863. While Dr. Teague expressed his opinion in March 2010, Dr. Bolz reviewed the evidence and affirmed Dr. Teague's assessment in January 2011 -- again, after expiration of the closed period of disability Plaintiff alleges. PageID 687, 863. Similarly, Dr. Collins had access to all relevant evidence when she affirmed Dr. Meyer's opinion, with regard to Plaintiff's mental limitations, in December 2010. PageID 678, 847. Nevertheless, as noted above, the ALJ -- in his decision -- extensively discussed all medical opinion evidence and Plaintiff fails to identify any evidence or opinions of record that undermine the opinions of any specific medical source or set forth limitations more extensive than those set forth by the ALJ in the RFC determination.

Accordingly, the undersigned finds that substantial evidence supports the ALJ's assessment of the medical opinion evidence, and recommends that Plaintiff's assignment of error in this regard be overruled.[13]

### B. Allegations of Disabling Symptoms and Pain

Plaintiff next challenges the ALJ's determination concerning her allegations of disabling symptoms. Doc. 7 at PageID 999. "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a); *Buxton*, 246 F.3d at 773; *Felisky*

---

[13] To the extent that Plaintiff argues the ALJ erred by not specifically addressing whether she was entitled to a closed period of disability, the Court finds no error in this regard. The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision." PageID 81. Because no "magic words" are required regarding whether the ALJ specifically considered and rejected a closed period, and because the ALJ discussed the medical evidence relevant to the closed period here at issue, his conclusion -- that Plaintiff was not disabled -- "clearly includes a finding that she was not entitled to a closed period of disability." *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-cv-1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012).

*v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)). "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citation omitted). Second, where, as here, "the ALJ finds that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id*. (citations omitted); s*ee also* SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996).

In this case, Plaintiff challenges the ALJ's conclusion at the second part of this analysis. In evaluating that second prong, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

Additionally, the ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This

Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

In challenging the ALJ's credibility finding, Plaintiff argues that the ALJ erred in "relying on [her] level of daily activities to find that she could perform work activity on a regular and continuing basis from her onset date through the end of August 2010." Doc. 7 at PageID 999. Plaintiff relies on three cases to support her argument, all of which discuss whether daily activities can be a "good reason" to reject a treating source opinion. *See* doc. 7 at PageID 999-1000; *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377-78 (6th Cir. 2013).

Here, the ALJ relied on Plaintiff's description of her daily activities -- as reported to Dr. Bonds in January 2010 and to the ALJ during her hearing in May 2012[14] -- not to reject a treating source opinion but, instead, to support his conclusion that her impairments do not "seriously interfere with her ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, and interact with others." PageID 77. Thus, the cases cited by Plaintiff are distinguishable and fail to resolve whether the ALJ properly assessed the intensity, persistence, and limiting effects of Plaintiff's symptoms. Additionally, all three cases

---

[14] To the extent that Plaintiff argues that the ALJ erred in relying on her hearing testimony concerning her daily activities, because it was "obtained in 2012 and was not relevant to [the closed period,]" the undersigned finds no error. Doc. 7 at PageID 999. Plaintiff did not request a closed period of disability at the hearing, and Plaintiff's attorney, although he examined Plaintiff at the administrative hearing, did not elicit testimony from her specifically concerning her activities during the closed period of July 1, 2009 through late August 2010, or clarify that her testimony was not applicable to the closed period. *See* PageID 97-101.

involved the ALJ's mischaracterization of a Plaintiff's activities; here, in contrast, Plaintiff does not argue that the ALJ misrepresented her daily activities or took them out of context. *See* doc. 7 at PageID 999-1000; *Johnson*, 652 F.3d at 652; *Cole*, 661 F.3d at 939; *Gayheart*, 710 F.3d at 378.

The undersigned concludes that substantial evidence supports the ALJ's findings in this regard. It was appropriate for the ALJ to take Plaintiff's activities -- such as regularly spending time with friends, exercising daily, working puzzles, reading, watching television, and driving, PageID 77 -- into account when assessing her reports of disabling symptoms and limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ also properly considered whether objective evidence supported Plaintiff's contention that she was unable to work and the lack of treatment history with regard to her mental symptoms. PageID 75-77. Accordingly, the undersigned concludes that the ALJ engaged in the analysis required by the regulations in assessing the intensity, persistence, and limiting effects of Plaintiff's symptoms.

Further, no medical source opined that Plaintiff was more than moderately impaired with regard to her ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, and interact with others. *See* PageID 652, 664, 678. To that end, the ALJ included a restriction in Plaintiff's RFC to account for her impairment in concentration, persistence, and pace.[15] PageID 74, 78.

---

[15] While Dr. Meyer opined -- and Dr. Collins concurred -- that Plaintiff was moderately impaired in her ability to relate to others, the ALJ reasonably determined -- based on Dr. Bonds' report, Plaintiff's testimony, and her lack of mental health treatment -- that she had only a mild impairment in social functioning. PageID 73, 678, 847. Therefore, the ALJ did not include a restriction in Plaintiff's RFC based on social functioning. *See* PageID 78. Plaintiff does not challenge this aspect of the ALJ's RFC determination, and the Court finds the ALJ's analysis in this regard supported by substantial evidence. *See* doc. 7 at PageID 998.

Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's assessment of Plaintiff's allegedly disabling symptoms and limitations, as well as the ALJ's credibility determination. "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the undersigned must give deference to the ALJ's decision if it is supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted). Plaintiff's assignment of error in this regard should, thus, be overruled.

### IV.

For the foregoing reasons, the Court finds no merit to Plaintiff's assignments of error, and further finds the ALJ's non-disability determination supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the Court's docket.

Date: January 23, 2015           *s/ Michael J. Newman*
                                 Michael J. Newman
                                 United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).